898 So.2d 1194 (2005)
In the Interest of N.S. and D.S., Minor Children.
K.S., mother, and M.D., father, Appellants,
v.
Department of Children and Family Services, Appellee.
Nos. 2D04-211, 2D04-221.
District Court of Appeal of Florida, Second District.
April 8, 2005.
*1195 Frank D.L. Winstead of Winstead Law Offices, New Port Richey, for Appellants.
Bernie McCabe, State Attorney, and Agnes McCabe, Assistant State Attorney, Clearwater, for Appellee.
ALTENBERND, Chief Judge.
K.S. (Mother) and M.D. (Father) appeal an order terminating their parental rights to their children. Although we understand the trial court's decision to terminate parental rights in this difficult situation, we conclude that the Florida Department of Children and Family Services (Department) failed to prove its case. Accordingly, we reverse and remand for further proceedings. On remand, it may be necessary for the parents to be offered a case plan.
The Mother and Father are not married. The Mother is married to another man, but his whereabouts have been unknown to her for many years. The Mother and Father have apparently been residents of Oklahoma for most of their lives. Both parents have a history of drug addiction and drug-related criminal offenses. The Father is HIV positive. The Mother has previously had her parental rights terminated to three other children in the State of Oklahoma, two of whom were the biological children of her husband.
The Mother and Father were fleeing Oklahoma to avoid arrest when they ended up in Florida. Within days of their arrival, the Mother gave birth to twin boys, N.S. and D.S., in January 2002. The Department was notified about this situation and filed a shelter petition. Both children were placed in foster care upon their release from the hospital. Shortly after the twins were born, the Mother and Father were arrested on outstanding warrants and extradited to Oklahoma where they were both imprisoned. Thus, the Mother and Father have only spent a few days of their lives in Florida.
Despite their ties with the State of Oklahoma, that state refused jurisdiction in this case. None of the relatives of the Mother or Father in Oklahoma has been willing to accept a relative placement of these twins. As a result, the Department filed a petition for termination of the parental rights of both parents about eight months after the children's birth without offering either *1196 parent a case plan. At the time of the termination hearing, the twins had been in the same foster home since their birth and the only contact the children had had with either parent was a single visit with the Mother, six days before the termination hearing.
These facts admittedly would cause anyone to expect that termination might be a possible outcome in this case. The Department, however, failed to prove grounds for termination primarily for two reasons. First, because the Mother and Father were imprisoned in Oklahoma, no case worker was assigned to them. The Department had no ability to provide any testimony about the status of the parents for any time following the first days of these children's lives.
Second, both the Mother and the Father were given relatively short periods of incarceration in Oklahoma facilities. The Mother was being released from prison at the same time that the termination trial occurred. She came to Florida for the trial and testified. She explained that she had lost her older children because of a drug addiction and a bad relationship with her husband. As a result of therapy and training while in prison, she believed that she could avoid future drug abuse. She also had severed ties with her husband years before the trial. The Mother, who was in her mid-thirties, presented testimony strongly suggesting that she had turned over a new leaf and was ready for a new beginning. The Department had no evidence to refute her testimony.
The Father was still imprisoned at the time of the hearing, and he attended it telephonically. He was scheduled to be released a few months after the hearing and presumably has since been released. He too testified that he had received therapy to help him overcome his drug abuse. He had become religious while in prison and believed that he could start a new life when he was released. Although his HIV condition was certainly a challenge for him, the Department had no evidence to suggest that this condition alone required termination of his parental rights at this time.
Because the parents have had no real contact with the twins since their birth and were never offered a case plan, the trial court could only terminate based on conduct by the Mother and Father that occurred while the Mother was pregnant or past conduct by both the Mother and Father that was unrelated to the birth of the twins. The Department's petition included four grounds for termination: (1) section 39.806(1)(i), Florida Statutes (2003), alleging the Mother's parental rights had been terminated involuntarily as to another child; (2) section 39.806(1)(c), alleging the Mother and Father engaged in conduct toward the children that continued to threaten the life, safety, well-being, or physical, mental, or emotional health of the children irrespective of the provision of services; (3) section 39.806(1)(b), alleging the Father abandoned the children; and (4) section 39.806(1)(d), alleging the Father was incarcerated and continued contact between him and the children would be harmful to the children. We conclude that the Department failed to prove any of these grounds. See R.W.W. v. Dep't of Children & Families (In re C.W.W.), 788 So.2d 1020, 1023 (Fla. 2d DCA 2001) (citing Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991)).

SECTION 39.806(1)(i)
The Department sought termination of the Mother's parental rights under section 39.806(1)(i) because she previously had her parental rights involuntarily terminated as to other children in Oklahoma. However, in 2004, after the trial court entered the final order in this case, the Florida Supreme Court addressed the *1197 constitutionality of this statute. See Fla. Dep't of Children & Families v. F.L., 880 So.2d 602 (Fla.2004). The supreme court held that
parental rights may be terminated under section 39.806(1)(i) only if the state proves both a prior involuntary termination of rights to a sibling and a substantial risk of significant harm to the current child. Further, the state must prove that the termination of parental rights is the least restrictive means of protecting the child from harm.
Id. at 609-10. The Department did not prove these elements, in part, because it did not realize that it had this burden.
In determining whether there is a substantial risk of significant harm to the current child, courts are instructed to look closely at the totality of the circumstances, such as the circumstances leading to the prior involuntary termination, the amount of time that has passed since the prior termination, and evidence of change since the prior termination. Id. The Mother's prior terminations were the result of a drug addiction and an abusive relationship with her husband. The Department did not present evidence that these issues presented a substantial risk of significant harm to these two children, particularly in light of the Mother's long separation from her husband and her testimony regarding her drug treatment. On remand, the Department can try to establish a connection, but if the trial court decides the circumstances under which these terminations occurred have changed, then these prior terminations would have limited applicability to the Mother's present ability to parent these children.

SECTION 39.806(1)(c)
The Department failed to present evidence that the children's lives, safety, or health would be threatened by continued interaction with the Mother and Father regardless of any services. Section 39.806(1)(c) provides in part that termination is permissible
[w]hen the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services.
The Department sought termination of the Mother's rights under this section based on conduct toward "other children" and conduct toward the twins. Although there was evidence that the Mother's past conduct toward her other three children was detrimental to those children, it does not support the trial court's finding of clear and convincing evidence that the Mother's involvement with the twins would be harmful to them. See, e.g., J.H. v. Dep't of Children & Family Servs. (In re E.I.F.), 872 So.2d 924 (Fla. 2d DCA 2004).
The Department also alleged that the Mother and Father engaged in conduct toward the twins that threatened their welfare. As to the Mother, the alleged harmful conduct all stemmed from behavior she engaged in while pregnant with the twins, who were born healthy and with no signs of drug addiction. Especially in light of the Mother's testimony concerning her own rehabilitation while in prison, the Department failed to prove this theory by clear and convincing evidence.
The Department also alleged that termination of both the Mother's and Father's parental rights was proper under section 39.806(1)(c) because the Mother admittedly used drugs during the first few weeks of her pregnancy before she knew she was pregnant and because the Father continued to use drugs until two months prior to the twins' birth. However, the Department failed to present evidence that the *1198 children would be harmed by continued interaction with the parents as a result of this. The trial court erred in terminating the Mother's and Father's parental rights under section 39.806(1)(c) when improvement was demonstrated and further improvement was possible. See M.H. v. Dep't of Children & Families, 866 So.2d 220, 222-23 (Fla. 1st DCA 2004) (holding that in order to terminate under section 39.806(1)(c), the trial court must show that the children's welfare would continue to be threatened by the parent regardless of the provision of services and that there is no reasonable basis to believe that the parent will improve).

SECTION 39.806(1)(b) AND (1)(d)
The trial court erred in terminating the Father's parental rights pursuant to section 39.806(1)(b) and section 39.806(1)(d). The Father's incarceration formed the Department's basis for termination on both of these grounds; however, the Department failed to establish how the Father's short-term incarceration justified termination. Section 39.806(1)(b) provides that termination of parental rights may be undertaken when a child is abandoned as defined by section 39.01. A trial court may consider a parent's criminal history and incarceration as factors when deciding whether or not to terminate on the grounds of abandonment, however, "incarceration alone is insufficient grounds to terminate parental rights on the grounds of abandonment." J.T. v. Dep't of Children & Family Servs. (In re T.B.), 819 So.2d 270, 272 (Fla. 2d DCA 2002).
In its amended petition for termination, the Department alleged that the Father "abandoned these children prior to their birth, due to his ongoing criminal conduct and failure to obtain appropriate supplies, food etc. to provide for the children." While the concept of the Father abandoning the children in utero by not providing them with supplies or food seems tenuous to us, the Department offered no evidence to support this allegation or any specific instances of conduct. Absent any other evidence of abandonment, the Father's rights were improperly terminated based on his short-term incarceration. Id.; see also C.B. v. Dep't of Children & Families, 874 So.2d 1246 (Fla. 4th DCA 2004).
Likewise, a trial court is precluded from terminating parental rights on the statutory ground that continuing the parental relationship with the incarcerated parent would be harmful to the child under section 39.806(1)(d)(3) where no evidence regarding the impact of continuing the parent-child relationship is offered. See J.P.C. v. Dep't of Children & Family Servs. (In re J.D.C.), 819 So.2d 264, 266 (Fla. 2d DCA 2002). The Department sought termination under section 39.806(1)(d)(3), arguing that continuing the parental relationship between the Father and the twins would be harmful to the twins. The Department's failure to offer evidence regarding the impact of continuing the relationship precludes termination on this ground. Id.
From this record it would appear unlikely that the Department could terminate the parental rights of the Mother and Father without offering them a case plan. Unless the parents are willing to move to Florida, it will be very difficult for them to develop a bond with these children and fulfill a meaningful case plan. This is not an easy case, but if the parents are willing to make a serious commitment to establishing a new way of life for these children, they may yet succeed.
Reversed and remanded.
NORTHCUTT and CANADY, JJ., Concur.